FILED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

98 FEB 18 PM 3: 22

U.S. DISTRICT COURT
N.D. OF ALABAMA

HAROLD MASON AND LINDA MASON, )
)
Plaintiffs, )
)
vs. ) CV 97-PT-2647-M
)
STATE FARM LIFE INSURANCE COMPANY AND )
CHARLES GOUGH, )
)
Defendants. )

**ENTERED**

**FEB 1 8 1998**

## Memorandum Opinion

The cause comes on to be heard on a motion to remand filed by the plaintiffs, Harold Mason and Linda Mason ("Masons") on November 6, 1997. The plaintiffs claim that the basis for jurisdiction urged by defendants, diversity of citizenship, is defeated by the joinder of Charles Gough ("Gough") to the instant suit. Defendants State Farm Insurance Company ("State Farm") and Gough argue that the joinder of Gough is fraudulent, in that the Masons cannot state a claim against Gough.

### Facts[1]

Linda and Harold Mason purchased life insurance from State Farm in March and July of 1986, respectively. At the time of purchase, Jim Mynatt, a former agent for State Farm, allegedly

---

[1] The "facts" are stated favorably to the plaintiffs and may or may not be the actual facts.

10

indicated that the $3,178.16 they had paid up front for the policies would relieve them of having to pay a premium for nine years. At the conclusion of the nine years, accumulated dividends would allegedly eliminate the need for the Masons to pay any premiums at all. The policies themselves indicated that premiums would be due "for life" and that dividends might be paid each year.

In the Spring of 1995, the Masons received a premium notice on their life insurance policies. Believing that the accumulated dividends had alleviated the need for premium payments, the Masons contacted an agent of State Farm, Gough, to inquire whether they were required to pay any premiums.[2] According to the plaintiffs, Gough mollified their concerns by representing to them that by filling out a couple of forms, their dividends would be utilized to pay their premiums in perpetuity. The plaintiffs each signed a State Farm "Change Method of Dividend Payment" form, requesting the insurer to pay all future premiums from the dividends on the policies. The premiums were paid by the accumulated dividends. Two years later, in the Spring of 1997, the plaintiffs received a notice of premiums due for an amount "above that which would be paid [by] the policies['] dividends." Complaint at ¶ 9. The plaintiffs each filled out another dividend payment form on March 8, 1997, requesting that all future premium payments be made from the Masons' dividends. On August 12, 1997, the Masons received a letter stating that at some point in time the dividends on the policies might be sufficient to pay the premiums on the policies, but not guaranteeing such. The plaintiffs have paid the premiums in 1997.

## Contentions & Analysis

In considering a motion to remand we examine the record at the time of removal to determine if grounds exist for the assertion of federal jurisdiction. When jurisdiction is premised upon diversity of citizenship, all plaintiffs must be citizens of separate states than the defendants. Although the complaint is generally to be taken at face value, where a non-diverse party is joined as a defendant, the court is permitted to examine the record to determine if a claim can potentially be stated against the non-diverse party. Beyond the pleadings, "the court may consider affidavits and deposition transcripts submitted by the parties." Crowe v. Coleman, 113 F.3d 1536, 1538 (11th Cir. 1997).

---

[2] In the interim, the Masons' agent, Jim Mynatt, had passed away.

> While "the proceeding appropriate for resolving a claim of fraudulent joinder is similar to that used for ruling on a motion for summary judgment under Fed. R. Civ. P. 56(b)," [B. Inc. v. Miller Brewing Co., 663 F.2d 545, 549 n.9 (5th Cir. Unit A 1981)], the jurisdictional inquiry "must not subsume substantive determination." Id. at 550. Over and over again, we stress that "the trial court must be certain of its jurisdiction before embarking upon a safari in search of a judgment on the merits." Id. at 548- 49. When considering a motion for remand, federal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law. See Id. "If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court." Coker v. Amoco Oil Co., 709 F.2d 1433, 1440-41 (11th Cir. 1983), superseded by statute on other grounds as stated in Georgetown Manor, Inc. v. Ethan Allen, Inc., 991 F.2d 1533 (11th Cir. 1993).

Crowe v. Coleman, 113 F.3d at 1538 (emphasis added). In light of this, the court will consider the defendants' contention that the plaintiffs cannot state a claim against Gough.

State Farm argues that Gough is not liable for any of the enumerated claims against him: misrepresentation of material facts in 1995, suppression, deceit, and fraudulent deceit. State Farm's contention that Gough cannot be found liable is supported (1) by the argument that the plaintiffs' reliance on Gough's representations was not reasonable and (2) by the argument that the plaintiffs' claims against Gough do not fall within the statute of limitations.

I. WHETHER THE PLAINTIFFS' RELIANCE ON GOUGH'S REPRESENTATIONS WAS REASONABLE.

The requirements of a misrepresentation claim are "proof (1) of a false representation; (2) that the false representation concerned a material existing fact; (3) that the plaintiff relied upon the false representation; and (4) that the plaintiff was damaged as a proximate result of the reliance." Harrington v. Johnson-Rast & Hays Co., 577 So.2d 437, 439 (Ala.1991). The reliance of a plaintiff on a misrepresentation must be reasonable. Foremost v. Parham, 639 So.2d 409, 421 (Ala. 1997).

> After careful consideration, we conclude that the "justifiable reliance" standard adopted in Hickox, which eliminated the general duty on the part of a person to read the documents received in connection with a particular transaction (consumer or commercial), should be replaced with the "reasonable reliance" standard most closely associated with Torres v. State Farm Fire & Casualty Co., 438 So.2d 757 (Ala.1983). The "reasonable reliance" standard is, in our view, a more practicable standard that will allow the factfinder greater flexibility in determining the issue of reliance based on all of the circumstances surrounding a transaction, including the mental capacity, educational background, relative sophistication, and bargaining power of the parties. In addition, a return to the "reasonable reliance" standard will once again provide a mechanism, which was available before Hickox, whereby the trial court can enter a judgment as a matter of law in a fraud case where the undisputed evidence indicates that the party or parties claiming fraud in a particular transaction were fully capable of reading and understanding their documents, but

3

nonetheless made a deliberate decision to ignore written contract terms. This Court in Hickox deviated from this State's public policy that had been expressed in our caselaw as early as 1849, see Munroe v. Pritchett, 16 Ala. 785 (1849), and that had been codified by the legislature in 1907. See Ala. Code 1975, § 6-5-101; Harton v. Belcher, 195 Ala. 186, 70 So. 141 (1915).

Id.

> Because it is the policy of courts not only to discourage fraud but also to discourage negligence and inattention to one's own interests, the right of reliance comes with a concomitant duty on the part of the plaintiffs to exercise some measure of precaution to safeguard their interests. In order to recover for misrepresentation, the plaintiffs' reliance must, therefore, have been reasonable under the circumstances. If the circumstances are such that a reasonably prudent person who exercised ordinary care would have discovered the true facts, the plaintiffs should not recover. Bedwell Lumber Co. v. T & T Corporation, 386 So.2d 413, 415 (Ala. 1980).
>
> "If the purchaser blindly trusts, where he should not, and closes his eyes where ordinary diligence requires him to see, he is willingly deceived, and the maxim applies, 'volunti non fit injuria'." Munroe v. Pritchett, 16 Ala. 785, 789 (1849).

Torres v. State Farm Fire & Casualty Co., 438 So.2d 757, 758-59 (Ala.1983). An individual who can read and understand the policy provided him should be apprized of conflicts between written and spoken word. Foremost, 693 So.2d at 422. And spoken assuagements aside, a plaintiff's reliance should fall with the written word. Id. State Farm contends that language in the policy conflicts with what the plaintiffs were allegedly told by Gough and that, therefore, the plaintiffs should have relied on the policy rather than Gough. The plaintiffs, by contrast, state that Gough's comments could be fairly interpreted not to conflict with the language of the policy, but to complement it. Further, the plaintiffs' claim, when they received the notice of premiums due in Spring of 1995, an act apparently revealing the earlier fraud, they contacted Gough to resolve their concerns about whether they should rely on the notice or on the earlier representations. In allaying their concerns about fraud, the plaintiffs argue, Gough committed another fraud by telling them that premiums would be paid by dividends if particular forms were filled out.

The insurance contract indicated that premiums for the insurance policy were payable "for life." The policy also states:

> **Annual dividends.** We may apportion and pay dividends each year. Any such dividends will be paid at the end of the policy year if all premiums due have been paid. No dividend will be paid if the Basic Plan is in force as extended term insurance.
>
> * * *
>
> DIVIDEND OPTIONS. You may choose to have your dividend used under one of

4

>    these options:
>    1.   Premium Payment. We will apply it toward payment of a premium then due.

Policy at 9 (emphasis added).

"The terms in an insurance contract are to be given a rational and practical construction." Anderson v. Brooks, 446 So.2d 36, 39 (Ala. 1984). "Ambiguous language in an insurance policy in an insurance policy must be construed by the courts liberally in favor of the insured and strictly against the insurance company." St. Paul Fire & Marine Ins. V. Edge Memorial Hosp., 584 So.2d 1316, 1322 (Ala. 1991); See Bituminous Casualty Corp. v. Harris, 372 So.2d 342, 344 (Ala. Ct. Civ. App. 1979). The primary issue here is the construction of the policy. While it would appear that the term "may" should reasonably be interpreted as indicating a possibility or, in any event, a discretion of the insurer, that is a matter which goes to the merits of the case against both defendants, not just an issue of fraudulent joinder as to one defendant. This court cannot determine that there is no possibility that the term would be construed as mandatory rather than permissive by the state courts. While it is unlikely, it is possible. See Burgers Mining & Construction Co., 294 Ala. 74, 312 So.2d 24 (Ala. 1975). This court should be careful not to merely reach the merits of the case against the defendants in determining the jurisdictional issue.[3]

II. ARE THE CLAIMS AGAINST GOUGH TIMELY FILED?

The defendants next contend that the statute of limitations had run at the time of the plaintiffs' filing of the instant action.

> "A fraud action is subject to the two-year statute of limitations of Ala. Code 1975, § 6-2-38(l), but the two-year period does not begin to run until the plaintiff has discovered, or should have discovered, the fraud. See § 6-2-3." Howard v. Mutual Sav. Life Ins. Co., 608 So.2d 379, 381 (Ala. 1992). "The question of when a party discovered or should have discovered fraud which would toll the statute of limitations is for the jury." Vandegrift v. Lagrone, 477 So.2d 292, 295 (Ala. 1985).

Kelly v. Connecticut Mut. Life Ins. Co., 628 So.2d 454, 458 (Ala. 1993). This issue may be taken from the jury however, in cases in which the plaintiffs should have, through the exercise of reasonable care, become aware of the fraud. Foremost, 693 So.2d at 422. The cause of action does

---

[3] The court notes that even were the "may" language of the policy to preclude relief against the non-diverse defendant, it would also preclude relief against the diverse defendant. Because the plaintiffs would be incapable of stating a claim against the diverse defendant, that defendant would as well have been "fraudulently joined" to the suit.

not accrue when the plaintiffs actually become aware of facts that would lead a reasonable person to determine fraud, but when a reasonable person should have been aware of facts from which he or she could detect fraud. Id.

Again, we have primarily a merits issue against both defendants, not simply a fraudulent joinder issue against one defendant. This court will not reach the merits.

This 18th day of February 1998.

ROBERT B. PROPST
SENIOR UNITED STATES DISTRICT JUDGE

6